# Pittsburg Bridge & Iron Works *v.* Fulmer, Appellant.

*Contract—Building contract—Engineer—Evidence—Question for jury —Oral negotiations.*

1. In an action of assumpsit it appeared that the defendant was a contractor for the erection of a church edifice, and that the plaintiff entered into a contract with the defendant to furnish among other things certain twelve-inch steel columns which were to conform to the drawings and specifications of the architect of the building, and to be of sufficient strength to carry a certain weight. After the columns had been put in place the architect notified the defendant to remove the columns that had been placed, as defective, and to replace them by proper columns which would carry the specified weight. The defendant turned over this notice to the plaintiff who wrote in reply that the columns delivered were proper ones, in accordance with the contract, but that they would take them out and install others on the condition that they would be paid for the extra work involved in the substitution. Other correspondence followed but not sufficient to sustain an independent oral agreement on the part of the defendant to reimburse the plaintiff for the increased cost. The correspondence and oral testimony left such question of compensation open to be determined justly and make it depend upon whether the columns originally furnished did comply or not with the provisions of the contract. There was evidence that the columns originally furnished fell short of the bearing capacity specified. *Held,* that the whole case was for the jury to determine whether the columns originally furnished complied with the contract, and whether the plaintiff was entitled to recover anything for the increased cost of substituting new columns for the old ones.

2. As a general rule all negotiations, conversations and oral agreements preliminary to a contract are merged and terminated by the execution of the written instrument, and evidence thereof is inadmissible in the absence of fraud, accident or mistake.

Argued April 21, 1911. Appeal, No. 153, April T., 1911, by defendant, from judgment of C. P. No. 4, Allegheny Co., Second Term, 1908, No. 89, on verdict for plaintiff in case of Pittsburg Bridge & Iron Works v. Frank H. Fulmer. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit for material furnished.   Before Cohen, J.
The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

If the plaintiff did the work that was assigned to it, and
provided the material, as called for in the contract, it is
not responsible for any defect in the workmanship of the
erection of those columns as forming a part of the building
which was being put up.   [Did the plaintiff supply col-
umns as provided in the contract?   They were twelve-inch
columns.   Why were the columns changed from twelve-
inch to fourteen-inch?   Did the owner of the building, or
the architect and his engineer, afterwards discover that
the size provided for in the designs and plans and draw-
ings was not as it should have been, and that the columns
should have been fourteen instead of twelve?   If that is so,
that was not the fault of the bridge company, for they
took the plans and designs and made the columns accord-
ing to the plans—that is, if they did; and if they made
them according to those designs, as represented on the
drawings and as qualified by the testimony of McEwen—
adopted, as he says, by the architect; and if the material
that went into the columns furnished, and the workman-
ship, was of the character required by the contract then
the defendant is liable for the amount of this bill] [1] and
if the plaintiff did not do this, the defendant is entitled to
your verdict.

I am asked by the defendant to say to you:

It appearing from the uncontradicted evidence that the
Z-bar columns erected by the plaintiff were condemned
by the architect, because he, the architect, alleged that
the columns as erected by the plaintiff were defective and
of inferior workmanship and not of sufficient strength to
carry the specified load of 225 tons, as provided by plans
and specifications, and that the plaintiff without a writ-
ten contract and without having the additional costs first
ascertained proceeded to supply the columns of the kind
and dimensions specified by the architect, and pursuant

thereto, ordered the defendant to have the columns taken down, loaded on cars and shipped to the plaintiff's Rochester works, which the defendant did, and it appearing that the said remodeled iron work was then shipped back and replaced in the said building and that the cost of taking down said iron work, loading the same on wagons to be reshipped to the plaintiff's works, and for reconstructing the said structural iron work when the same was returned to the building, after the plaintiff had reinforced it as required by the architect, amounted to $506.04, the plaintiff is properly charged with the said item of $506.04 as an item of set-off against plaintiff's claim.

This point is affirmed, if the jury finds the evidence to be as alleged in this point. What is and what is not the testimony or evidence is a matter entirely for the jury.

2. That under the law and evidence in this case, the verdict must be for the defendant.

That point I refuse, I leave to the jury the verdict, under all the evidence should be for the plaintiff, or for the defendant. [4]

I do not know whether I have made myself plain to the jury or not. [To my mind this case involves a very simple question: Was there compliance on the part of the bridge company with the contract it undertook, did they supply the columns of the size set forth in the design, did they build those columns in manner and form as contemplated by the contract? If they did, the architect had no right to order the removal because they were not strong enough, if the fact that they were not strong enough arose from ill-judgment on the part of the architect's engineer in the matter of drawing these plans and specifications.] [2]

Mr. Fulmer: May I ask the court to instruct the jury on this one point: as to whether or not the plaintiff is bound by that clause in the agreement which provides that the amount of any increase shall first be ascertained and agreed to in writing?

[The Court: If the work done and for which this suit is brought, was on account of the fact that it had been done

defectively and not in accordance with the contract, then the order had to be, under the contract, in writing, to entitle the plaintiff to recover.   But if the work done and for which this action is instituted, is independent of the contract and was merely for the purpose of increasing the size of the pillars from twelve to fourteen inches, then the agreement for the work for which this suit is brought need not have been in writing.] [3]

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were (1–4) above instructions quoting them.

*E. E. Fulmer,* for appellant.

*John D. Evans,* with him *Roger Knox,* for appellee.

OPINION BY RICE, P. J., October 9, 1911:

The defendant, being the contractor for the erection of a church edifice, entered into a written agreement with the plaintiff whereby the latter engaged to deliver at the building certain structural steel and other materials, for which it was to be paid by the defendant $7,050.   The contract provided that the work should be in strict accordance with the drawings and specifications furnished therefor by John A. Long, the architect of the building; that it should be under the supervision and direction of the defendant and the architect; and that the latter should have power to reject any work or material not in accordance with the drawings and specifications, and to cause other and more suitable materials to be substituted at the expense of the plaintiff.   The controversy in the case relates to four Z-bar columns of structural steel intended to support the central tower of the church.   After the columns had been delivered by the plaintiff and had been put in place by the defendant, and, as the plaintiff's evidence tended to show, after its entire contract had been

performed, the architect notified the defendant: "to provide, without further delay, proper 12 inch Z-bar columns, of standard shapes and continuous dimensions throughout, properly to carry the specified load of 225 tons; same to be of perfect workmanship, and to install same, instead of the defective columns as furnished at present, which stand condemned by reason of inferior workmanship and bearing capacity." Upon receipt of this notice the defendant transmitted a copy to the plaintiff, accompanied by the statement, "I hereby serve the same notice on you according to the terms of our contract." The plaintiff wrote the defendant in reply, asserting that the columns as manufactured and shipped to the defendant were in accordance with the architect's plans and specifications, and stating that it was willing to proceed with the changing of the columns on condition that it was paid, "for all extra work and material which is necessary to bring the columns up to the standard as now required by the architect." On the same date the defendant wrote in reply: "I beg to take exception to your statement that you are proceeding with the work with the understanding that all extra expenses will be borne by me. The notice served on me by the architect did not contain any such provision, and it is my understanding and directions that you proceed with the same according to his notice, a copy of which you have in your possession, without any extra cost to me whatever. This is the position taken by the architect, when I submitted a copy of your letter to him, and is the position I am forced to take with you." A day or two later the plaintiff wrote the defendant expressing surprise at the stand taken by the architect as to the payment for extra work, especially "because the columns have been made in accordance with his drawings." The letter then proceeds: "You know, as well as we, that no power on earth can compel us to furnish without compensation material not called for in original plans and specifications. As stated in our letter of November first, we are proceeding with the work; we have ordered the extra material from

the mills, and are revising our drawing in accordance with the suggestions of Mr. Kindl and Mr. Carroll of Mr. Long's office, so as to be submitted to you at the earliest possible moment for Mr. Long's approval. In the meantime we trust to you to have the columns taken down, loaded on cars, and shipped to us at our Rochester works. We shall use every effort to have them returned to you with as little delay as possible. We must insist, however, that we obtain in the next few days your assurance that payment on all work done and material furnished in making the changes ordered by the architect be forthcoming in accordance with our letter of November first." The correspondence closed with a letter from the defendant to the plaintiff, in which he stated that, in accordance with the instructions given in the plaintiff's letter, he was taking down the columns and would have them taken outside the building ready for loading on a wagon, and requesting plaintiff to attend to having them hauled and shipped. Replying to the plaintiff's request for a written order for the work, he said, reaffirming, in effect, what he had stated in his former letter: "I cannot give any written order for this work or in any way assume the responsibility for the performance of the same or become liable for any costs which may attach to the same, including the forfeit of $100 per day should such be required by the building committee." This correspondence fails to sustain the allegation of the statement of claim that the work done and materials furnished in changing the columns were done and furnished pursuant to an independent oral agreement between the parties and upon the faith of the defendant's promise to reimburse the plaintiff for the same. On the contrary, the defendant's position was that the plaintiff was bound to make the changes by its original contract, while the plaintiff's position was that it had fully performed its contract and, if it made the changes now required, was entitled to compensation therefor as extra work. The oral testimony does not put the case in much more definite position. The utmost that can be claimed for it is that it

shows that the parties left the question of compensation to be determined justly and therefore to depend upon the question whether the Z-bar columns as originally furnished conformed to the requirements of the written contract. If they did not, the evidence, oral and written, was insufficient to establish either an express or an implied contract on the part of the defendant to pay the cost of the labor and material which the defective performance on the part of the plaintiff made necessary. On the other hand, if the plaintiff had fully performed its contract, the court would not have been warranted by the oral evidence in charging that the plaintiff was a mere volunteer or acted gratuitously in what it did afterwards, but would have been warranted in charging that, if the jury believed the testimony of the plaintiff's witnesses as to the oral understanding under which the work was done, then as to those changes which full performance of its original contract did not require the law would imply, from the defendant's acceptance of the work and materials, an obligation on his part to pay the cost. The case was not one for binding direction either way.

The foregoing conclusion renders it necessary to refer more particularly to the requirements of the written contract, of which the plans, designs, or drawings furnished by the architect, and the specifications attached to the contract, formed a part. It appears in evidence, and is undisputed, that the columns were shown on the plans or drawings as twelve inch Z-bar columns; but the written specifications contained this material clause: "Trusses, supporting tower, must be calculated to carry uniformly distributed load of 900 tons, and Z-bar columns must be of sufficient to carry each 225 tons," and then follow the significant words, "all other steel work to be furnished as marked on plans." Having regard to the purpose for which the columns were required, it would seem clear that this provision as to their bearing capacity was of equal, if not greater, importance than their mere dimensions as shown by the drawings, and further that in determining

whether the requirement was fulfilled the length of the columns must be taken into account. Compliance with the provision would not be shown by evidence that a twelve inch column of less length would have the required bearing capacity. This conclusion as to the materiality and controlling effect of this provision of the specifications is brought very clearly into view by the concluding words we have quoted. The evident intention was that the columns should be of sufficient strength to carry a certain weight, while other steel work should be in accordance with the drawings. There was ample evidence to support a finding that the columns furnished fell short of having a bearing capacity of 225 tons each, and that the work done and materials furnished in strengthening them were necessary in order to bring them up to the requirements. If that be the fact, which was for the jury to determine, the plaintiff was not entitled to recover the cost of the labor and materials, even though columns of the dimensions shown in the plans were furnished, unless this provision of the specifications was waived by the alleged action of the architect to which we shall hereafter refer. We are constrained to say that the portions of the charge quoted in the first three assignments, particularly the first, were not as clear and specific upon this vital point as the case required. The jury might well infer, from some portions of these instructions, that the plaintiff was not in fault if the columns furnished were of the size shown in the drawings and were of proper workmanship and materials. In this we think there was error, which was not counteracted and rendered harmless by other portions of the charge, and which, therefore, requires a reversal and retrial of the case.

Allusion was made, in the instructions complained of in the first assignment of error, to the testimony of Mr. McEwen, an assistant engineer of the plaintiff, relative to a conversation between him and the architect. The witness testified that in this conversation he called the architect's attention to the fact that the columns were not sufficiently strong without some intermediate supports, and that the

architect said he would investigate the matter. Later, according to his testimony, the architect informed him he had investigated the matter and the columns were all right as shown on his plan, and told him to go ahead and figure on them on that basis, as they would be supported at intermediate points. This testimony was admitted, without objection, but it is argued that it was immaterial and should not have been alluded to in the charge as affecting the question of the plaintiff's obligation under the written contract, or the question of its performance, because it took place before the contract was entered into. It was admitted by the witness that it took place before the material was delivered, and, whilst it is not absolutely clear, there are portions of his testimony which tend to support the contention of defendant's counsel that it took place while the preliminary negotiations leading up to the contract were in progress. The architect was not the general agent of the defendant and he had no general authority to waive performance of any of the material provisions of the contract or specifications. It was, therefore, incumbent on the plaintiff to show the time when and the circumstances under which the alleged declarations of the architect were made, so that the court might determine whether at that time and under those circumstances he was acting within the scope of his authority in attempting to bind the defendant. As a general rule, all negotiations, conversations, and oral agreements preliminary to a contract are merged and terminated by the execution of the written instrument, and evidence thereof is inadmissible in the absence of fraud, accident, or mistake. We discover nothing in the evidence to take this case out of the general rule, and, clearly, if this alleged conversation took place before the contract was executed, it could not affect the questions which the jury had to decide. Doubtless on another trial this uncertainty as to the time when and the circumstances under which the alleged conversation took place will be removed, and therefore we will not discuss the subject further.

Finally, it is urged that the order for the work and the materials embraced in the claim in controversy was within the clause in the contract requiring the cost to be ascertained first, and the contract therefor reduced to writing. The clause is as follows: "It is further agreed that if the party of the first part (defendant) should at any time during the progress of the work desire changes in either the quantity or quality of the work, such changes shall be executed by the party of the second part (plaintiff) without invalidating this contract. But the value of all such changes must first be ascertained and fixed, and the amount added or deducted from the amount of this contract, as the case may be, by an agreement in writing, or no allowance shall be made for them by either party." The argument of the learned counsel for the defendant has failed to make it clear to us that this clause of the contract has any bearing upon the question at issue. The plaintiff's claim is not for the cost of work and materials furnished or ordered "during the progress of the work," but for the cost of labor and materials furnished in making changes after its work had been completed, which changes full performance of its contract did not require. As already indicated, if it is unable to sustain this contention, it cannot recover; but that will be upon other grounds than that the cost of the changes was not agreed upon and put in writing before they were made. On the other hand, if it is able to sustain its contention, it is apparent, it seems to us, that it could recover, notwithstanding the clause of the contract above quoted. In that view, the changes not having been made or ordered during the progress of the work, the claim would not be within the true intent and meaning of the clause.

Judgment reversed and venire facias de novo awarded.